**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re FANNIE MAE 2008 SECURITIES LITIGATION | No. 08-CV-07831-PAC<br><br>MDL No. 2013 |
| COMPREHENSIVE INVESTMENT SERVICES, INC.,<br><br>          Plaintiff,<br><br>     -against-<br><br>FANNIE MAE, DANIEL H. MUDD, ROBERT J. LEVIN, STEPHEN M. SWAD, ENRICO DALLAVECCHIA, CITIGROUP GLOBAL MARKETS, INC., and WACHOVIA CAPITAL MARKETS, LLC,<br><br>          Defendants. | No. 09-CV-06102-PAC |
| EDWARD SMITH,<br><br>          Plaintiff,<br><br>     -against-<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, DANIEL H. MUDD, ENRICO DALLAVECCHIA, BANC OF AMERICA SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., DEUTSCHE BANK SECURITIES, INC., GOLDMAN SACHS & CO., JP MORGAN SECURITIES, INC., JPMORGAN CHASE & CO., MERRILL LYNCH, PIERCE, FENNER & SMITH INC., MORGAN STANLEY & CO. INCORPORATED, and UBS SECURITIES, LLC,<br><br>          Defendants. | No. 10-CV-02781-PAC |

**REPLY IN SUPPORT OF FANNIE MAE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF FANNIE MAE'S MOTION TO DISMISS**

Lead Plaintiffs[1] and individual shareholder plaintiffs Comprehensive Investment Services, Inc. ("CIS") and Edward Smith (collectively, "Plaintiffs") selectively cite or quote portions of certain documents, including the types of documents that Plaintiffs object to here, in order to support their allegations of securities fraud.  Plaintiffs cannot, however, prevent the Court from considering other judicially noticeable documents offered by Fannie Mae to provide a more complete and accurate picture of the depth and breadth of the public disclosures that Plaintiffs contend Fannie Mae never made.[2]

Plaintiffs complain that Fannie Mae did not disclose certain information to investors. The documents that Plaintiffs challenge show that the market and investors were aware of the information that Plaintiffs claim Fannie Mae hid.  Plaintiffs selectively rely on the very same types of documents – in particular the transcripts of investor calls – to support their omission claims.  Plaintiffs cannot state a claim for fraud where, as here, their "naked assertion of concealment of material facts … is contradicted by published documents which expressly set forth the very facts allegedly concealed."  *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 333 (S.D.N.Y. 1993) (internal quotation marks omitted).  The fact that Plaintiffs did not cite these documents in their respective complaints is of no moment, as it is well-settled in this Circuit that "where public records that are integral to a fraud complaint are not attached to it, the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those

---

[1] Class Plaintiffs Tennessee Consolidated Retirement Systems ("TCRS"), Massachusetts Pension Reserves Investment Management Board ("PRIM") and State-Boston Retirement Board ("SBRB") are referred to collectively throughout this Reply as "Lead Plaintiffs."

[2] Lead Plaintiffs and CIS oppose judicial notice of 14 of the 43 exhibits that Fannie Mae offered. Smith did not oppose Fannie Mae's request for judicial notice.  Neither Lead Plaintiffs nor CIS challenge that the following exhibits are proper subjects for judicial notice:  2-12, 16, 19, 22-23, and 30.  CIS also opposes judicial notice of three documents that were not the subject of Fannie Mae's request.  Two – Exhibits 27 and 37 – were cited in Lead Plaintiffs' class action complaint.  The third – Exhibit 33 – is an analyst report.  As discussed below, all three of these exhibits are proper for judicial notice.  The fact that Fannie Mae did not include them as part of its request is irrelevant.  Federal Rule of Evidence 201(c) provides that "[a] court may take judicial notice, whether requested or not."

records." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Because the challenged documents are integral to any fair understanding of the allegations in their respective complaints and the permissible inferences that can be drawn from those allegations, the Court should grant Fannie Mae's Request for Judicial Notice in its entirety.

Plaintiffs also contend that if the Court takes judicial notice of the challenged documents, the Court may consider them only for the fact of their publication, and not for the truth of the statements contained therein.  (Lead Pls. Opp'n to Fannie Mae's Req. for Judicial Notice ("Lead Pls. Opp'n") at 4; CIS Opp'n to Fannie Mae's Req. for Judicial Notice ("CIS Opp'n") at 6.) Fannie Mae does not offer the documents for the truth of the matter asserted, but rather the fact of publication itself is significant because it demonstrates that the information Plaintiffs allege was fraudulently concealed was in fact repeatedly disclosed to government regulators and known to the press, and therefore available to investors like Plaintiffs.  Accordingly, the Court should grant Fannie Mae's Request for Judicial Notice.

I.     **News Articles and Independent Analyst Reports (Exhibits 32, 33 and 35)**

Plaintiffs do not and cannot dispute that courts routinely take judicial notice of news articles and independent analyst reports like Exhibits 32, 33 and 35 as matters of a general public nature.  *See, e.g., Garber v. Legg Mason Inc*., 347 F. App'x 665, 669 (2d Cir. 2009) (taking judicial notice of newspaper articles); *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 424-26 (2d Cir. 2008) ("*Staehr II*") (affirming district court's judicial notice of mainstream and industry news coverage); *In re MBIA, Inc. Sec. Litig.,* 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010) (taking judicial notice of required SEC disclosures, news publications and analyst reports).  In an attempt to distort the purpose for which these documents were offered, Plaintiffs argue that these documents should be stricken because they were not relied upon in the complaints, are irrelevant,

or are proffered for the truth of the matters asserted.[3]  (*See* Lead Pls.' Opp'n at 7-9; CIS Opp'n at 2.)

Fannie Mae does not offer these documents – news articles concerning the historical meaning of the term "Alt-A" (Exs. 32 and 33) and showing that there was information about Fannie Mae's purchases of Fast & Easy loans in the press well before the close of the putative Class Period (Ex. 35) – for the truth of any matter asserted therein, but rather for the proper purpose of highlighting that market observers reported on the very things that Plaintiffs claim the market was unaware of during the putative class period.  *See, e.g., Finn v. Barney*, No. 11-1270-cv, 2012 U.S. App. LEXIS 6185, at *4 (2d Cir. Mar. 27, 2012) (taking "judicial notice of the documents for the purpose of establishing that the information was publicly available . . . both prior to and during the class period");[4] *Staehr II*, 547 F.3d at 425 (2d Cir. 2008) (affirming judicial notice of news articles that "were offered to show that certain things were said in the press" for "the fact that press coverage . . . or regulatory filings contained certain information, without regard to the truth of their contents"); *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09-9887, 2012 U.S. Dist. LEXIS 19879, at *24-25 n.4 (S.D.N.Y. Feb. 15, 2012) (taking judicial notice of news articles for the purpose of "demonstrating the existence of information in the market"); *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09-2030, 2012 U.S. Dist. LEXIS 77331, at *9 (S.D.N.Y. June 4, 2012) (same).  These documents place into context the purported "omissions" that Plaintiffs challenge and are properly subject to judicial notice.

Lead Plaintiffs rely heavily on *Ganino*, but its holding does not bar courts from considering press reports in connection with a non-disclosure claim.  Indeed, this Court recently applied *Ganino* in dismissing a securities claim after considering information in press coverage.

---

[3] Notably, Plaintiffs do not dispute the accuracy of the facts contained in the articles and analyst report.
[4] Lead Plaintiffs' objection to Exhibit 32 on the ground that it covers periods "prior to" the putative class period is therefore misplaced.

*See In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, No. 09 MD 2058 (PKC), 2012 U.S.
Dist. LEXIS 55234 (S.D.N.Y. Apr. 12, 2012).  Judge Castel explained that "this was not a
circumstance in which press accounts contradicted statements made by the defendants, thereby
requiring the Court to 'counter-balance effectively any misleading information created by the
alleged misstatements.'" *Id*. at \*41 (quoting *Ganino v. Citizen Utils. Co.*, 228 F.3d 154,167 (2d
Cir. 2000)).  The Court dismissed the securities fraud claims because "Plaintiff does not allege
with particularity that in addition to the publicly reported investigations and litigations, other
undisclosed investigations were of a different nature or magnitude so as to significantly alter the
total mix of information available to the market." *Id*. at \*42.  Fannie Mae does not offer the
press reports at issue here to contradict its public Fannie Mae's statements, but rather to
demonstrate that the information that Plaintiffs claim was hidden was in fact publicly available.[5]

## II. Public Statements Concerning Fannie Mae's Loan Characteristics (Exhibits 24, 29, 34) and Fannie Mae's Annual Housing Activities Reports (Exhibits 18, 25, 26)

Plaintiffs object to the Court's consideration of certain public statements and reports that
Fannie Mae issued during the putative class period disclosing the characteristics of Fannie Mae's
loan portfolio, arguing that these statements and reports were not integral to their respective
complaints, and are inappropriate for judicial notice.  It cannot be seriously disputed that the
public statements and reports issued by Fannie Mae describing the characteristics of its loan
portfolio are integral to the Plaintiffs' complaints – they go to the heart of Plaintiffs' claims that
Fannie Mae tried to hide this information from investors.  "Even where a document is not
incorporated by reference, the court may nevertheless consider it [when deciding a motion to
dismiss] where the complaint relies heavily upon its terms and effect, which renders the

---

[5] Lead Plaintiffs also argue that these documents are inappropriate for judicial notice because Fannie Mae offers
them to negate the element of loss causation.  (Lead Pls. Opp'n at 9.)  That is not in fact the case, as Fannie Mae has
not moved at this time to dismiss Lead Plaintiffs' disclosure-based claims for failure to plead loss causation.

document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotations omitted).

Plaintiffs also object to Fannie Mae's request that the Court take judicial notice of these documents in that they are being offered to dispute the truth of Plaintiffs' allegations. (Lead Pls. Opp'n at 9-10.) As an initial matter, "a court need not feel constrained to accept as truth [allegations contradicted] by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001). Regardless, Fannie Mae does not offer these documents for the truth of the matters asserted therein, but rather because each of these documents disclose the very facts that Plaintiffs claim Fannie Mae masked. Plaintiffs cannot state a claim for fraud where, as here, their "naked assertion of concealment of material facts … is contradicted by published documents which expressly set forth the very facts allegedly concealed." *Sable*, 819 F. Supp. at 333 (S.D.N.Y. 1993) (internal quotation marks omitted).

Fannie Mae's Annual Housing Activities Reports ("AHARs") are also judicially noticeable on the independent ground that they are public documents filed with the government pursuant to statute. *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 415 (S.D.N.Y. 2009) ("The Court may also take judicial notice of filings with government agencies that are a matter of public record.") Fannie Mae's AHARs are also referenced in Fannie Mae's Forms 10-K for both 2006 and 2007, which Plaintiffs concede are integral to their complaint. (*See* Ex. 44: FY06 10-K at 14-16; Ex. 45: FY07 10-K at 14-16.)

## III.   Earnings Conference Call Transcripts (Exhibits 17, 28-29, 31)

Exhibits 17, 28-29 and 31 to the Walsh Declaration are excerpts from transcripts from conference calls with Fannie Mae investors and analysts. Courts routinely take judicial notice of investor or analyst calls – which are publicly available – even if they are not referenced in a

plaintiff's complaint.  *In re Pfizer, Inc. Sec. Litig.*, 538 F, Supp. 2d 621, 627 (S.D.N.Y. 2008).

Plaintiffs first argue that the call transcripts in question are "unauthenticated."  (*See* Lead Pls.

Opp'n at 10; CIS Opp'n at 3-5.)[6]  This argument is without merit – a declaration from counsel

stating than an exhibit is authentic is sufficient to determine authenticity for purposes of a

request for judicial notice.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 460 F. Supp. 2d 329, 335 (D.

Conn. 2006) ("*Staehr I*"), *vacated on other grounds by Staehr II*, 547 F.3d 406 (2d Cir. 2008).

Lead Plaintiffs also argue that Exhibit 29 is irrelevant because "it refers to a time period

three years before the Class Period."  (Lead Pls. Opp'n at 11.)  But the date of this particular

transcript is precisely why it is relevant – it demonstrates that as early as 2003, Fannie Mae made

clear to the market that its Expanded Approval ("EA") mortgages were offered to borrowers with

weaker credit histories as an *alternative* to subprime and was not itself a subprime product.

## IV.  Government Reports and SEC Correspondence

Lead Plaintiffs' objections to Exhibits 1, 13, and 14 are based on the same specious claim

that these government reports and SEC correspondence are offered "for the truth of the matter

asserted therein and to dispute the Complaint's allegations."  (Lead Pls. Opp'n at 12.)  Lead

Plaintiffs do not dispute the fact that "[c]ourts have frequently taken judicial notice of official

government reports as being 'capable of accurate and ready determination by resort to sources

whose accuracy cannot reasonably be questioned.'"  *B.T. Produce Co. v. Robert A. Johnson*

*Sales, Inc.*, 354 F. Supp. 2d 284, 285 n.2 (S.D.N.Y. 2004) (quoting Fed. R. Evid. 201(b)(2)); *see*

*also Roussin*, 664 F. Supp. 2d at 415.  Regardless, the Court need not consider whether the

contents of the reports and correspondence are true – only that the information contained therein

---

[6] CIS's citation to *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997), in support of its opposition to judicial notice of the investor/analyst transcripts is inapposite, as (1) unlike the transcripts at issue here, the transcripts at issue in *Cooper* were not publicly available prior to the filing of the complaint; and (2) *Cooper* is a pre-Reform Act case addressing the admissibility of safe harbor warnings that has nothing to do with the issues in this case.

was disclosed to the public.  *See, e.g., In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 763 F. Supp. 2d 423, 582 (S.D.N.Y. 2011) (taking judicial notice of SEC filings and other communications related to companies other than defendant, general news articles, journal and industry reports, and congressional testimony and speeches for "the fact that these documents contain certain information").

**CONCLUSION**

For the foregoing reasons, Fannie Mae respectfully requests that the Court take judicial notice of the documents attached to the Declaration of Michael J. Walsh, Jr.

Dated: June 18, 2012                                   Respectfully submitted:

O'MELVENY & MYERS LLP

By: /s/ Jeffrey W. Kilduff
       Jeffrey W. Kilduff (*pro hac vice*)
       jkilduff@omm.com
       Robert M. Stern
       rstern@omm.com
       Michael J. Walsh, Jr.
       mwalsh@omm.com

1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Counsel to Defendant Fannie Mae*